**In re Antonio LOPREATO, Appellant.**

**No. 74–1418.**

United States Court of Appeals, First Circuit.

Argued Jan. 8, 1975.
Decided Feb. 9, 1975.

---

James R. McGowan, Providence, R. I., with whom Harold C. Arcaro, Jr. and Salter, McGowan, Arcaro & Swartz Incorporated, Providence, R. I., were on brief, for appellant.

S. Michael Levin, Sp. Atty., Crim. Div., U. S. Dept. of Justice, with whom Lincoln C. Almond, U. S. Atty., Providence, R. I., and Charles J. Alexander, Sp. Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C. were on brief, for appellee.

Before COFFIN, Chief Judge, and McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

The appellant was subpoenaed to appear before and to provide handwriting exemplars to a special grand jury empanelled pursuant to 18 U.S.C. § 3331. He had been previously informed that he was a "target" of the grand jury's inquiry. When he failed to appear, a lengthy and thorough hearing was provided by the district court to determine whether his appearance should be ordered. The appellant challenged the authority of the U. S. Attorney to subpoe-

na him without specific grand jury authorization and claimed that a violation of his Fifth Amendment due process rights would occur if he, a "target", was required to appear even for the limited purpose of providing handwriting samples. The district court rejected these and other claims not raised here and, after calling the appellant into the courtroom, ordered his appearance before the grand jury for the purpose of providing handwriting exemplars. When the appellant remained recalcitrant, a second summary hearing was conducted and the court ruled the witness in civil contempt under 28 U.S.C. § 1826. This appeal followed.

■ This circuit has been presented with several recalcitrant grand jury witnesses in the recent past. In the cases we have thus far treated, the witnesses have based their challenges to specific questions on statutory provisions affording protection against government wiretapping in situations not limited to grand jury proceedings. *See, e. g.,* In re Lochiatto, 497 F.2d 803 (1st Cir. 1974). Here the controversy is restricted to the rights of a witness acknowledged to be a "target" of investigation when called before the grand jury. We reassert the principles guiding any decision affecting the orderly administration of the grand jury: a grand jury is entitled to every person's testimony, United States v. Dionisio, 410 U.S. 1, 9–10, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); expeditious handling of its proceedings is a major policy consideration, United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); and, therefore, unnecessary delay of the proceedings and dilatory tactics on the part of witnesses are to be strongly discouraged. This is a case of such delay. The challenges of the witness are without merit.

■ A presumption of regularity attaches to grand jury proceedings and hence to a grand jury subpoena. *See, e. g.,* In re Grand Jury Proceedings (Universal Mfg. Co.), 508 F.2d 684, (8th Cir. 1975). Those challenging such a subpoena have the burden of showing that ir-

regularity exists, In re Grand Jury Proceedings (Schofield), 486 F.2d 85, 92 (3d Cir. 1973). We deal with the least persuasive of the appellant's contentions first. At the end of several hours of hearing preceding the court's order to appear, the district judge examined the subpoena and noted that there was no return indicated thereon. Only at this point in the hearing did the attorney for the witness raise the claim that the subpoena was improperly served. Even if we did not think that the witness had by then waived such a claim, the fact that the witness was present in court, personally ordered to appear before the grand jury, and that it was for the disobedience of this order that he was held in contempt would in any case make irrelevant the claimed failure of service.

Further argument below was premised on two separate theories, that without specific grand jury authorization, the U. S. Attorney could not issue a subpoena and that it was a denial of due process to call a "target" of the proceedings before the grand jury even for the limited purpose of providing handwriting exemplars.

In bolstering the first theory, the appellant makes much of the fact that the grand jury sat in a room designated as the U. S. Attorney's library, and that the U. S. Attorney was given blank subpoenas by the clerk of the court, and finally that the power of subpoena has been traditionally denied to executive agencies. But all of the cases cited by the appellant are cases where the power of subpoena was abused either to provide the U. S. Attorney an opportunity to coerce witnesses to appear before him personally, e. g., Durbin v. United States, 94 U.S.App.D.C. 415, 221 F.2d 520 (1954); United States v. Thomas, 320 F.Supp. 527 (D.D.C.1970), or to undertake far reaching inquiries irrelevant to the legitimate purposes of the grand jury or not made in good faith. United States v. Doe (Ellsberg), 455 F.2d 1270 (1st Cir. 1972); *see also* United States v. Dionisio, 410 U.S. 1, 10, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973); Branzburg v. Hayes,

408 U.S. 665, 707–08, 709–10, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); Brown v. United States, 276 U.S. 134, 48 S.Ct. 288, 72 L.Ed. 500 (1928); McGarry v. S.E.C., 147 F.2d 389 (10th Cir. 1945). There is no allegation here that the appellant was not in fact called to appear before a grand jury empanelled within the space designated as the U. S. Attorney's library. Indeed, the court could have taken notice of the fact that the grand jury was there convened. The cases cited which deal exclusively with abuse of process are inapposite.

■ The contention that the U. S. Attorney was without authority to have the subpoena issued in the first instance runs counter to established practice, and to the statutory language of 18 U.S.C. § 3332 which anticipates that the U. S. Attorney will bring the evidence before the grand jury. In addition the Federal Rules of Criminal Procedure, Rules 6 and 17, have been interpreted to permit such procedures, *see Schofield, supra,* 486 F.2d at 90; *see also* Wright, Federal Practice and Procedure §§ 101, 271, 273 (1969). Abuse of process is avoided by court supervision and the individual witness charged with civil contempt is protected by the requirement of a court order independent of the original subpoena as the premise for contempt proceedings. *Schofield* at 88–90.

■ We now consider appellant's charge that his Fifth Amendment due process rights were violated. This argument is two pronged but each tine is weak. He first contends that it was fatal to the case below that the U. S. Attorney failed to offer an affidavit as to the relevance and proper purpose of the intended use of handwriting exemplars. But it was the representation of the witness' attorney below that the witness would be asked to sign names used to endorse certain checks relating to an inquiry into the witness' tax liability. The government acceded to this representation. Apparently assuming that the evidence requested was clearly relevant, the

witness requested no affidavit below. Even were we to adopt the Third Circuit's rule in *Schofield, supra* at 93; *but see* In re Grand Jury Proceedings (Universal Mfg. Co.), 508 F.2d 684, n. 2 (8th Cir. 1975), we would hold the right to an affidavit of relevancy waived in this instance.

■ The final contention is the assertion that the very appearance of a "target" before the grand jury for any purpose whatever is violative of his Fifth Amendment due process rights. The appellant pegs his hopes on generalized "due process" rights because the Supreme Court has clearly established that the Fifth Amendment protection against self-incrimination is not encroached upon by the requirement of providing handwriting samples, Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967),* and, more to the point, that a grand jury witness who was a potential defendant or "target" could be required to give handwriting exemplars, United States v. Mara, 410 U.S. 19, 93 S.Ct. 774, 35 L.Ed.2d 99 (1973), *see also* United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (1973). A Fourth Amendment claim has also been specifically rejected in this context, *Dionisio* at 13, 93 S.Ct. 764. In light of these cases and of the established practice they illustrate, the appellant's assertion is reduced to just that; it has no legal merit.

■ Having established the propriety of the district court's decision to order the appellant's appearance before the grand jury and production of handwriting exemplars, all that remains is an investigation of whether the witness had "just cause" for his failure to appear. Title 28 U.S.C. § 1826 provides for a summary order of confinement "whenever a witness in any proceeding before . . . [a] grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information." The order was clearly one to provide in-

---

* The allegation that the exemplars, as described by appellant's attorney, are communicative is also without substance.

**1154**

formation and the witness did not appear. The appellant claims that his failure to appear was justified by his desire to preserve the issues above discussed for appeal. This argument is analogous to asserting as an excuse for tortious conduct a desire to assert a Seventh Amendment right to jury trial. Like the other claims it fails to persuade us. A review of the transcripts and record below indicate that the remaining assertions of the appellant are equally without merit.

The judgment of the District Court is affirmed. Mandate to issue forthwith.